UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED

OCT 2 9 2021

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT

---

JOHN C.,

                Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

20-CV-00876-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

Plaintiff John C.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 14) is granted, defendant's motion (Dkt. No. 15) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for SSI on April 14, 2017, alleging a disability onset date of March 26, 2017. (Administrative Transcript ["Tr."] 144-48). The application was initially denied on September 6, 2017. (Tr. 64-81). Plaintiff timely filed a request for an administrative hearing. (Tr. 84-86, 102-04). On May 23, 2019, Administrative Law Judge ("ALJ") Bryce Baird held a hearing in Buffalo, New York, at which Plaintiff appeared with his attorney. (Tr. 32-60). A vocational expert also testified. The ALJ issued a decision finding Plaintiff not disabled, on June 11, 2019. (Tr. 12-31). On May 12, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

### I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the

- 4 -

Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 14, 2017, the application date.  (Tr. 17).  At step two, the ALJ found that Plaintiff had the following severe impairments: history of stroke in April 2017; seizure disorder; and encephalopathy.  *Id.*  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-20).  Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), involving simple routine tasks that could be learned after a short demonstration or within 30 days and requiring no more than simple work-related decisions. Further, this work would not involve driving a vehicle, more than simple work-related decisions, or teamwork, such as on a production line. He further found that such work would require doing the same tasks every day with little variation in location, hours, or tasks. He also stated that Plaintiff would be allowed to be off-task five percent of the workday in addition to regular breaks, and would be further limited to occasionally climbing ramps or stairs; occasionally balancing, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and never being exposed to hazards

such as unprotected heights or moving machinery. (Tr. 20-25). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 25-26).  At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy.  (Tr. 26-27).  Accordingly, the ALJ determined that Plaintiff has not been under a disability from April 14, 2017, 2016, the date the application was filed.  (Tr. 27).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred by relying on stale medical opinions and the case must therefore be remanded.  The Court agrees.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Carney v. Berryhill*, 2017 WL 2021529, *6 (W.D.N.Y. 2017) (*citing Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (quotation marks and citation omitted)). A medical opinion is stale where does not account for the claimant's deteriorating condition; *see, e.g., Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding."); *Gray v. Colvin*, No. 1:16-CV-00231 (MAT), 2017 WL 562152, at *3 (W.D.N.Y. Feb. 11, 2017) (remanding because ALJ relied on a stale medical opinion; after the opinion was given but before the ALJ's decision, plaintiff underwent a second knee surgery); *Girolamo v. Colvin*, 2014 WL 2207993, *7-8 (W.D.N.Y. May 28, 2014) (finding that the ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery); *Jones v. Comm'r of Soc. Sec.*, 2012 WL 3637450, *2 (E.D.N.Y. Aug. 22, 2012) (finding that the

ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition").

In the instant case, the ALJ, in determining the Plaintiff's RFC, found persuasive the medical opinions of consultative internal medical examiner Dr. Nikita Dave, M.D., consultative psychological examiner Janine Ippolito, Psy.D., and reviewing medical consultant Dr. G. Feldman, M.D. (Tr. 24-25). All three opinions were rendered in August 2017. However, subsequent to these opinions and before the ALJ's decision, Plaintiff's condition deteriorated substantially. Plaintiff's subsequent seizure and psychiatric related hospitalizations rendered the opinions stale. For example, on October 9, 2017, Plaintiff was seen in the emergency room related to a grand mal seizure that lasted less than 2 minutes. (Tr. 915). It was noted that Plaintiff had been compliant with his medications of Keppra and Vimpat. (Tr. 915). On examination and discharge, Plaintiff was assessed with grand mal seizure disorder. (Tr. 917). Plaintiff additionally presented to the emergency department on October 24, 2017, complaining of confusion. (Tr. 911). It was noted that he recently had his Keppra changed to a liquid form. (Tr. 911). Plaintiff was discharged with a diagnosis of adverse side effects of medication. (Tr. 913). CT imaging performed on October 24, 2017, showed intracerebral vascular atherosclerosis, age-related volume loss, and white matter disease. (Tr. 896).

On October 27, 2017, Plaintiff returned to the emergency department complaining of altered mental status. (Tr. 905). He had episodes where he appeared gregarious, but then started crying, followed by flights of thoughts, and then a return to completely normal. (Tr. 905). It was noted the side effects could be related to Keppra use for seizures. (Tr.

905). On examination and discharge, Plaintiff was assessed with adverse side effects of medication. (Tr. 905).

An additional trip to the hospital occurred on November 26, 2017, due to complaints relating to altered mental state (Tr. 899). Upon examination, Plaintiff was again assessed with adverse effects from his medication. (Tr. 904). Plaintiff was also seen in the emergency department on July 12, 2018 related to a possible stroke. (Tr. 889-894). On July 13, 2018, Plaintiff was involuntarily admitted to Niagara Falls Memorial Medical Center due to psychosis. (Tr. 1064). The Plaintiff was originally brought in by police from Mount Saint Mary's Hospital's emergency room after being aggressive in the waiting area. (Tr. 1064). Plaintiff was having depressive symptoms, with some odd behaviors noted as well. (Tr. 1064-1065). Plaintiff's mother and ex-boyfriend reported that they believe Plaintiff suffers from a great deal of depression due to suffering a stroke in the past. (Tr. 1065). A mental status exam indicated Plaintiff had a euthymic mood, slightly restricted affect, poor insight and judgment, was not truthful, and seemed guarded about his information and what was really going on with his thoughts and behaviors. (Tr. 1065). Plaintiff was diagnosed with depressive disorder and major depressive disorder with psychosis. (Tr. 1066). He was also given a GAF score of 40. (Tr. 1066). Plaintiff was discharged a few days later, on July 16, 2018. (Tr. 1068). It was recommended that Plaintiff see outpatient mental health services due to presenting with depressive symptoms and behaviors. (Tr. 1069). However, it was noted that Plaintiff would probably not be compliant. (Tr. 1069). Plaintiff was discharged with the medications of Lamictal and Norvasc. (Tr. 1069).

On August 6, 2018, Plaintiff was brought into the emergency department of Niagara Falls Memorial Medical Center for an acute psychotic episode. (Tr. 935). It was noted that Plaintiff had been sexually preoccupied and increasingly agitated, so his family called crisis services for a psychiatric evaluation. (Tr. 935). Plaintiff was sedated due to his extreme agitation. (Tr. 937). On examination, Plaintiff was assessed with acute psychosis. (Tr. 937). Plaintiff was admitted to the psychiatric unit. (Tr. 1071). Plaintiff reported that he has no memory of what happened and did not understand why he was in the hospital. (Tr. 1071). A mental status exam on August 7, 2018 demonstrated relevant but not productive speech, a slightly anxious and perplexed affect, poor insight, and poor judgment. (Tr. 1072). He was acting very out of control, agitated, sexually inappropriate, was beating his backside at the emergency room, but then such behavior, as he did not remember. (Tr. 1072). Plaintiff was diagnosed with psychotic disorder and substance-induced mood disorder was ruled out. (Tr. 1072). Plaintiff was eventually discharged on August 9, 2018. (Tr. 1074). A mental status exam on discharge indicated that Plaintiff had a slightly irritable, agitated, and slightly bizarre affect, poor insight, and poor judgment. (Tr. 1075). He was diagnosed with psychotic disorder, and provisional diagnoses of major depressive disorder with psychosis and substance-induced psychosis. (Tr. 1075).  He was given a GAF score of 45. (Tr. 1075).

The record also demonstrates that since the rendering of Dr. Ippolito's psychiatric opinion, Plaintiff underwent psychotherapy through the Niagara County Department of Mental Health, where he had been diagnosed with bipolar disorder, current episode mixed, and alcohol dependence. (Tr. 927). Furthermore, the record and evidence cited above also notates that Plaintiff's brain had physically degenerated after the rendering of

the opinions from Dr. Ippolito, Dr. Dave and Dr. Feldman. The record shows that after the state agency opinions were rendered, Plaintiff had additional seizures, and brain imaging showed intracerebral vascular atherosclerosis, age-related volume loss, white matter disease, atrophy and changes consistent with small vessel disease. (Tr. 915-917, 896, 1080).

Given this evidence, the medical opinions of Dr. Ippolito, Dr. Dave, and Dr. Feldman were stale. After these opinions were rendered, Plaintiff's condition deteriorated considerably, as demonstrated by his seven hospitalizations, two of which required extended stays. "A gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion; however, such an opinion may be stale if the claimant's condition deteriorates during that time." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172-FPG, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018); *see, e.g., Pierce v. Astrue*, 2010 WL 6184871, at *9 (N.D.N.Y. July 26, 2010), *report and recommendation adopted* 2011 WL 940342 (N.D.N.Y. Mar. 16, 2011) ("Because the ALJ's RFC determination was so heavily based upon Dr. Scerpella's August 2005 assessment, it is flawed for the reasons stated above, namely, because the record contains sufficient evidence to question whether that assessment was rendered stale by subsequent events."); *Schuler v. Colvin*, No. 5:13-CV-144 GLS, 2014 WL 2196029, at *3 (N.D.N.Y. May 22, 2014) (remanding because non examining physician's opinion was stale and new mental status examinations were needed). Courts have ruled that subsequent mental health diagnoses can render prior opinion evidence stale. *See Maxwell H. v. Comm'r of Soc. Sec.*, No. 119CV0148LEKCFH, 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020) ("These new 2016 and 2017 diagnoses—which the ALJ did

have in front of him—suggest that Plaintiff's condition worsened in the period after Dr. Noia examined him. For this reason alone, Dr. Noia's opinion was stale by the time the ALJ relied on it to calculate Plaintiff's RFC."); *Desnerck v. Berryhill*, No. 1:15-CV-0465-MAT, 2018 WL 300109, at *3 (W.D.N.Y. Jan. 5, 2018) (remanding where opinion evidence was rendered prior to plaintiff's hospitalizations and subsequent psychiatric treatment); *Davis v. Berryhill*, No. 16-CV-6815, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018) (determining that the opinions of two consultative examiners were stale because "significant developments in Plaintiff's medical history had occurred since" the opinions were issued, including hospitalizations, hallucinations, and suicidal ideation); *Crawley v. Berryhill*, No. 1:16-CV-00271 (MAT), 2018 WL 2354984, at *3 (W.D.N.Y. May 24, 2018) ("Here, the state agency reviewing physicians rendered their opinion prior to Plaintiff's suicide attempt and inpatient psychiatric treatment and therefore could not have factored this evidence of a deterioration in Plaintiff's mental health into their conclusions. These opinions therefore cannot constitute substantial evidence in support of the ALJ's conclusions and it was error for him to rely on them."); *Davis v. Berryhill*, No. 6:16-CV-06815 (MAT), 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018) (remanding where state agency opinions were rendered stale by evidence of subsequent inpatient mental health treatment.).

Given the ALJ's reliance on the stale opinions of Dr. Dave, Dr. Ipppolito, and Dr. Feldman, the RFC determination and disability decision are not supported by substantial evidence.   While the ALJ did address the Plaintiff's subsequent seizures and hospitalizations in his decision (Tr. 23-24), he simply interpreted the raw medical data and examination results and crafted his RFC findings based on his own lay judgment of the record. This was error.  See *Davis v. Berryhill*, No. 6:16-CV-06815 (MAT), 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018) ("In this case, where the medical assessments relied upon by the ALJ were stale and based on an incomplete medical record, the ALJ could not remedy that deficiency by making the connection between the medical records and Plaintiff's functional limitations herself.").

As many courts have pointed out, "an ALJ is not a medical professional, and 'is not qualified to assess a claimant's RFC on the basis of bare medical findings.'" *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 411, 416 (W.D.N.Y. 2019) (quoting *Ortiz v. Colvin*, 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018)). "Thus, even though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself.'" *Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018); *Hillyard v. Comm'r of Soc. Sec.*, 2020 WL 429136, *4 (W.D.N.Y. Jan. 27, 2020) ("[T]the ALJ may not interpret raw medical data in functional terms.") (quotation omitted). "In other words, an ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson." *Hayes v. Comm'r of Soc. Sec.*, No. 18-CV-

963-FPG, 2020 WL 728271, at *3 (W.D.N.Y. Feb. 13, 2020); *Caraco v. Comm'r of Soc. Sec.*, No. 1:18-CV-00908 EAW, 2020 WL 415939, at *3 (W.D.N.Y. Jan. 24, 2020) ("An ALJ is prohibited from "playing doctor" in the sense that "an ALJ may not substitute his own judgment for competent medical opinion"); *Goble v. Colvin*, 15-CV-6302 CJS, 2016 WL 3179901, *6 (W.D.N.Y. June 8, 2016) ("the ALJ is not free to form his own medical opinion based on the raw medical evidence") (citations omitted).

Additionally, "the leeway given to ALJs to make 'common sense judgments' does not typically extend to the determination of mental limitations, which are by their nature 'highly complex and individualized.'" *Maxwell H. v. Comm'r of Soc. Sec.*, No. 119CV0148LEKCFH, 2020 WL 1187610, at *7 (N.D.N.Y. Mar. 12, 2020) (quoting *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018); *Andriaccio v. Berryhill*, No. 18-CV-84, 2019 WL 1198357, at *6-*7 (W.D.N.Y. Mar. 14, 2019); *See also Jordan v. Berryhill*, No. 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018) ("Without some explanation from ALJ Seeley as to the tether between her RFC and the [] medical opinions or statements from plaintiff, the RFC appears to be based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand.")

The ALJ should have requested subsequent consultative examinations of Plaintiff's conditions in order to assess properly Plaintiff's functional abilities given the existence of the subsequent diagnoses and medical conditions. A consultative examination may be required in order to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a(b). "It is considered 'reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for

him to make an informed decision.'" *Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) (quoting *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.1985) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 15) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     October 29, 2021
           Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge